**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**ERNEST L. COTTON, Esquire, as
guardian ad litem for, HAN-SUN BOYNTON,**

    **Plaintiff,**

vs.                                                        **Case no. 3:05cv46-RS**

**PRUDENTIAL INSURANCE COMPANY
OF AMERICA d/b/a SERVICEMEMBERS'
GROUP LIFE INSURANCE,**

    **Defendant.**

_____

## ORDER ON AMENDED MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendant's Amended Motion for Summary Judgment and Memorandum of Law In Support Thereof (Doc. 30) and Plaintiff's Response (Doc. 33 ).

### I. FACTS

Many of the facts are set forth in Judge Vinson's Order dated May 2, 2005 (Doc. 8):

Han-Sun Boynton and David Boynton were married on or about April 16, 1990. While serving in the United States Air Force, David Boynton obtained a Servicemembers' Group Life Insurance ("SGLI") policy in the amount of $200,000.00. Defendant Prudential Life Insurance Company of America ("Prudential") issued the policy through the Office of Servicemembers' Group Life Insurance ("OSGLI"), an organization created by the United States government.

Under the "Election of Beneficiaries" section of the policy, David Boynton entered the phrase "By Law." As that phrase is defined on the back of the insurance form, David Boynton's wife, Han-Sun Boynton, was the sole beneficiary. David Boynton retired from the military on June 30, 1993, and his SGLI policy remained in effect for

120 days after his retirement.  On August 9, 1993, David Boynton worked at Kelly's IGA in Niceville, FL, from midnight until 8:00 AM.  David Boynton has not been seen or heard from since.  Three days after his disappearance, authorities located Mr. Boynton's abandoned vehicle on Eglin Air Force Base.  One of Mr. Boynton's handguns was located inside the abandoned vehicle; another handgun which he also owned was never recovered.  David Boynton's body was never recovered.  Mr. Boynton's disappearance occurred while the SGLI policy was in effect.

On November 15, 1999, a judge of the Okaloosa County Circuit Court entered an order declaring David Boynton "presumed dead" as of August 1998 pursuant to Florida Statute § 731.103(3) (2005).  Florida Statute § 731.103(3) (2005) provides in relevant part:

> A person who is absent from the place of his or her last known domicile for a continuous period of 5 years and whose absence is not satisfactorily explained after diligent search and inquiry is presumed to be dead.  The person's death is presumed to have occurred at the end of the period unless there is evidence establishing that death occurred earlier.

On March 2, 2000, Han-Sun Boynton requested payment of the life insurance proceeds under the SGLI policy.  Prudential denied the request for payment.  In a letter to Han-Sun Boynton's guardian ad litem, Ernest L. Cotton, Prudential explained that no death benefits were payable because David Boynton's death was presumed to have occurred in August 1998 pursuant to the Okaloosa County Circuit Court's order.  The SGLI coverage terminated on October 18, 1993.

On November 12, 2004, Plaintiff filed a complaint in the Circuit Court in Okaloosa County, Florida, alleging breach of contract and seeking benefits under the SGLI policy.  The complaint alleges that Florida law permits a court to find that David Boynton's death occurred within the § 731.103(3) five-year statutory period and while the SGLI coverage was still in effect.  Prudential removed the case to federal court based on diversity and federal question jurisdiction under the Servicemembers' Group Life Insurance Policy Act ("SGLIA"), 38 U.S.C. §§ 1965 et seq.  Prudential then filed a Motion to Dismiss (Doc. 3), arguing that federal law completely preempted any cause of action based on state law and that Plaintiff's breach of contract claim therefore failed to state a claim upon which

relief could be granted.

Judge Vinson's Order (Doc. 8) denied the Motion to Dismiss (Doc. 3). First, the Order concluded that the complete preemption doctrine was inapplicable because federal question jurisdiction appears on the face of the well-pleaded complaint. Second, the Order determined that Florida law could be used to determine the date of David Boynton's presumed death based on the following reasons: (1) Florida law is not preempted by the SGLIA because the SGLIA statute does not address the date on which an insured is "presumed dead," and (2) applying state law does not offend congressional policy favoring a uniform, nationwide interpretation of the SGLIA because (1) the insured was presumed dead pursuant to a Florida court order that was based on Florida law and (2) Prudential's decision to deny benefits was based on the Florida court order.

Prudential filed a Motion for Summary Judgment (Doc. 9) on September 13, 2005. On November 14, 2005, Prudential filed an Amended Motion for Summary Judgment (Doc. 30) in which it argued that (1) federal statutory and common law apply and require the Court to conclude that David Boynton died after the policy terminated and (2) if the Court determines that sufficient evidence exists that David Boynton perished while the policy was in effect, the only logical conclusion was that David Boynton's death was the result of suicide, a loss excluded from coverage under the policy.

## II. DISCUSSION

**A. The Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law

governing the case, such that its presence or absence might affect the outcome of the suit." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton, 965 F.2d at 998 (citing Matsushita, 475 U.S. at 587).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251.  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)).  However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251).

If the movant, here the defendant, satisfies its initial burden under Rule 56(c) by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).  Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991).  "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton, 965 F.2d at 998 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson, 477 U.S. at 255 (citing Adickes, 398 U.S. at 158-59). In light of the summary judgment standard, the Court will apply the relevant substantive law to the facts of the case.

### B. Jurisdiction

As a threshold matter, the Court reaffirms the presence of federal question jurisdiction. This Order incorporates Judge Vinson's discussion of federal question jurisdiction and the rejection of the complete preemption doctrine in his Order on the Motion to Dismiss. (Doc. 8, 3-5, part B). In addition, the Court adds that federal question jurisdiction is based on the implied cause of action granted to beneficiaries under the SGLI statute against the OSGLI. In Rice v. The Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1246-47 (10th Cir. 2001), the court concluded that Congress intended to permit a private cause of action based on the SGLI statute because: (1) the SGLI statute requires beneficiaries to make "claims" for payment under some circumstances but contains no mechanism by which the insurance contract can be enforced; (2) 38 C.F.R. § 9.13 provides that "Actions at law or in equity to recover on the policy . . . should be brought against the insurer"; and (3) "the interpretation and administration of an insurance policy issued under the authority of the servicemen's insurance statute . . . [is] supplied by federal common law" (quoting Prudential Ins. Co. of Am. v. Athmer, 178 F.3d 473, 475 (7th Cir. 1999)). The Court agrees with the Tenth Circuit's conclusion that an implied cause of action is granted to beneficiaries under the SGLI statute against the OSGLI. Accordingly, the Court considers the pending motion under federal question jurisdiction.

### C. Federal vs. State Law

Prudential argues that federal law applies; Plaintiff argues that state law applies. Prudential cites 38 U.S.C. § 108. Section 108 provides:

> 108. Seven-year absence presumption of death
>
> (a) No State law providing for presumption of death shall be applicable to claims for benefits under laws administered by the Secretary.
>
> (b) If evidence satisfactory to the Secretary is submitted establishing the continued and unexplained absence of any

> individual from that individual's home and family for seven or more years, and establishing that after diligent search no evidence of that individual's existence after the date of disappearance has been found or received, the death of such individual as of the date of the expiration of such period shall be considered as sufficiently proved.
>
> (c) Except in a suit brought pursuant to section 1984 of this title, the finding of death made by the Secretary shall be final and conclusive.

Prudential argues that Section 108 is applicable because "In light of the Order Declaring Death entered over six years from the date that the decedent disappeared, it is hardly a stretch of logic to find that the decedent has been continuously absent from his primary residence for at least seven years." (Doc. 30, 7). Prudential also admits that while Section 108 does not preclude a party from presenting evidence that the decedent died before the expiration of the seven-year period, federal common law imposes an insurmountable burden on plaintiff to prove that decedent died within the seven years:

> If it appears in evidence that the absent person, within the seven years, encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased before the expiration of the seven years.

Doc. 30, 7-8 (quoting Davie v. Briggs, 97 U.S. 628, 634 (1878)).

According to Prudential, the facts do not support an inference that David Boynton encountered a specific peril or came within the range of some impending or immediate danger prior to his disappearance. Therefore, Prudential contends that Plaintiff cannot rebut the Section 108 presumption that David Boynton died at the end of the seven-year period.

Plaintiff, on the other hand, rejects the applicability of 38 U.S.C. § 108 and federal common law and argues that state law applies. First, Plaintiff relies on Judge Vinson's conclusions in his Order on the Motion to Dismiss (Doc. 8) that Florida law governs because the presumption of death was based on a Florida statute, and Prudential denied benefits to Plaintiff based solely on an order of a Florida court interpreting that statute. Second, Plaintiff argues that Florida law is not inconsistent with the SGLIA or other federal statutory law. Third, Plaintiff asserts that Florida decisional

law allows a presumptive date of death to be rebutted through evidence, including circumstantial evidence. Plaintiff offers an affidavit from Brad Trusty, an investigator employed by the State Attorney's Office in Walton County, FL, to rebut the presumption of death contained in the Florida court's order. The affidavit states that "Based on my 15 years of experience at the time of this incident, my investigation, and my physical observations I concluded that Mr. Boynton died on or about August 9, 1993." (Doc. 30-5, 2). Fourth, Plaintiff argues that 38 U.S.C. § 108 is inapplicable because (1) the SGLIA is not administered by the Secretary of Veterans Affairs and (2) no evidence was ever submitted to the Secretary of Veterans Affairs regarding David Boynton's disappearance nor was a presumption of death ever made by the Secretary. The Court concludes that whether federal or state law is applicable need not be decided, for the analyses under both federal and state law permit but one conclusion: summary judgment in favor of Prudential.

### 1. Applying Federal Law

The Court will assume arguendo and for the sake of discussion only that federal law controls the analysis in this case. Under 38 U.S.C. § 108(b), the Secretary of Veterans Affairs is authorized to conclude that David Boynton died at the expiration of a seven-year period following his unexplained absence from his home and family if after a diligent search, no evidence of David Boynton's existence after the date of disappearance has been found or received. However, the plain language of Section 108(b) requires two conditions precedent before the seven-year absence presumption of death arises. The conditions precedent are as follows: (1) evidence must be submitted *to the Secretary* and (2) the evidence must be satisfactory *to the Secretary*. Only then can "the finding of death made by the Secretary . . . be final and conclusive." 38 U.S.C. § 108(c). Here, Plaintiff has not submitted evidence regarding David Boynton's disappearance to the Secretary of Veterans Affairs, nor has the Secretary made a finding of death. (Doc. 33, 5). Thus, no presumption of death has arisen under the statute, let alone a seven-year absence presumption of death. Accordingly, 38 U.S.C. § 108 (b) and (c) are inapplicable.

With 38 U.S.C. § 108(b) and (c) carved from the analysis, the Court directs its attention to 38 U.S.C. § 108(a). Section 108(a) states that "No State law providing for presumption of death shall be applicable to claims for benefits under laws administered

by the Secretary." Although Plaintiff argues that this provision is inapplicable because no evidence exists that the SGLIA is a law that is administered by the Secretary of Veterans Affairs, the Court will again assume arguendo and for purposes of continuing the analysis under federal law only that Prudential is correct and that 38 U.S.C. § 108(a) is applicable. If 38 U.S.C. § 108(a) controls, then the presumption of death contained in Florida Statute § 731.103(3) is inapplicable. And because no evidence exists that another federal statute supplies a presumption of death, it necessarily follows that Plaintiff is not presumed to be dead under either federal or Florida *statutory* law. The first question then that must be answered is whether David Boynton can be presumed to have died under federal *common* law.

Construing the decisional law in the light most favorable to the Plaintiff, the Court concludes that David Boynton is presumed to be dead under federal common law. In Davie v. Briggs, 97 U.S. 628 (1878) the United States Supreme Court stated that "The general rule undoubtedly is, that 'a person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death.'" Id. at 633-34 (quoting Stephen, Law of Evid., c. 14, art. 99; 1 Greenl. Evid., sect. 41; 1 Taylor, Evid., sect. 157, and authorities cited by each author). Here, David Boynton has not been seen or heard from since 1993, a time period of more than twelve years. Neither party has offered evidence to suggest that "circumstances of the case are such as to account for his not being heard of without assuming his death." In fact, both parties agree that David Boynton is presumed to be dead, although Plaintiff argues that the presumption arises under Florida law (Fla. Stat. § 731.103(3)) while Prudential argues that the presumption arises under federal law (38 U.S.C. § 108). Therefore, the Court will assume that David Boynton is presumed to be dead.

The second question that must be answered is whether Plaintiff is entitled to establish the actual date of death. Again, assuming arguendo that federal law applies, the Court answers this question in the affirmative. Under federal common law, any presumed date of death "is not conclusive, nor is it to be rigidly observed without regard to accompanying circumstances which may show that death in fact occurred within the seven years." Davie, 97 U.S. at 634. In further support of this assertion, the Davie

Court stated that

> Mr. Taylor, in his first volume of his Treatise on the Law of Evidence (sect. 157), says that, 'although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; and, therefore, if any one has to establish the precise period during those seven years at which such person died, he must do so by evidence, and can neither rely, on the one hand, on the presumption of death, nor, on the other, upon the presumption o [sic] the continuance of life.' These views are in harmony with the settled law for the English courts . . . In the leading case in the Court of Exchequer of Nepean v. Doe dem. Knight (2 Mee. & W. 894), in error from the Court of King's Bench, Lord Denman, C.J., said: 'We adopt the doctrine of the Court of King's Bench, that the presumption of law relates only to the fact of death, and that the time of death, whenever it is material, must be a subject of distinct proof.' To the same effect are . . . the preponderance of authority in this country . . . .

Id. at 634-35.

Prudential agrees that Plaintiff is entitled to rebut any presumed date of death and introduce evidence to establish the actual date of death; therefore, no further analysis on this point is needed. The dispute concerns the third question that must be answered, namely, how the presumed date of death, if any, can be rebutted and the actual date of death established. Prudential argues that federal common law imposes an insurmountable burden on Plaintiff to prove the actual date of David Boynton's death:

> If it appears in evidence that the absent person, within the seven years, encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased before the expiration of the seven years.

Doc. 30, 7-8 (quoting Davie v. Briggs, 97 U.S. 628, 634 (1878)).

According to Prudential, the facts do not support an inference that David Boynton encountered a specific peril or came within the range of some impending or immediate danger prior to his disappearance. Therefore, Prudential contends that Plaintiff cannot sufficiently prove the actual date of death.

Case law following Davie applies a more liberal standard in establishing the date of death. In Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 316, 318-19 (1902), the

United States Supreme Court stated that "But it was not thereby ruled [in Davie] that the inference of death might not arise from disappearance under circumstances inconsistent with a continuation of life, even though exposure to some particular peril was not shown, and the evidence indicated that Hunter came within the range of immediate danger."  Based on this language, the Mettler Court held that although there was no evidence that the insured was in a position of peril when last seen, the evidence nevertheless sufficiently established his death on December 4, 1896, where the insured's footprints were found leading to the edge of a river but not returning, there were indications that he had lost his footing, a mesquite root had been broken off, and evidence was presented regarding the depth, rapidity, and quicksands of the river.

In Peak v. United States, 353 U.S. 43, 44-46 (1957), the United States Supreme Court held that the petitioner was entitled to take her case to the jury regarding the insured's actual date of death where the complaint alleged that prior to his disappearance, the insured's condition was one of "'general debility and weakness and despondency,' and that he had become totally and permanently disabled as a result of certain 'diseases, ailments and injuries.'"  In addressing an issue identical to the one presented by this case, the court in Friedman v. United States of America, 186 F. Supp. 139, 142-43 (W.D. Ark. 1960), applied perhaps the most liberal standard encountered in the case law for determining the actual date of death:

> The only genuine issue to be decided by the court . . . is whether Louie Lelemsis died on or before July 31, 1953, while his National Service Life Insurance policy was in full force and effect.
>
> The burden of proof is upon the plaintiff to prove by a preponderance of the evidence that the insured died within the life of the policy . . . There is no special requirement in the policy or in the statutes that death be proved by an eyewitness, that the body be recovered and identified, or even that death by [sic] proved by direct and positive proof. In the absence of such requirements the general principles of insurance law must govern.  The general rule in this regard is stated in 29A, Am.Jur., Insurance, Sec. 1931, as follows:
>
> 'As a general rule, and in the absence of any policy provision to the contrary, the death of an insured person, the time of

> death, or the fact that the death or injury of the insured resulted from accidental means, may be proved by circumstantial evidence. It is sufficient if there is a preponderance of the evidence, whether direct or circumstantial, on such an issue, and it is not necessary that death of the insured be proved beyond a reasonable doubt.'"
>
> The above rule is recognized by the federal courts. In <u>United States v. O'Brien</u>, 51 F.2d 37 (4th Cir. 1931), a War Risk Insurance policy case, the court held that the disappearance of the insured, coupled with two suicide notes, his general despondency, and similar circumstantial evidence was sufficient to support a jury verdict that the insured had died before the policy lapsed.

The <u>Friedman</u> Court then determined that "[t]his is no ordinary disappearance case" and that the evidence sufficiently established the death of the decedent on February 22, 1953, where the insured suffered from a serious mental or emotional problem, his tracks could "literally be traced to the edge of a swift deep river, and from there is tracks stopped," and his dog repeatedly journeyed back and forth from the water's edge to the car in search of its master in "strong indication that its master had gone where it could not follow." <u>Id.</u> at 145. In <u>Rodriguez Diaz v. Mutual of Omaha Ins. Co.</u>, 803 F. Supp. 575 (D. Puerto Rico 1992), the court determined that the insured perished on the day of his absence where his boat was found capsized in shark-infested waters, the waves were choppy, the Coast Guard concluded that there was a "minimal chance of survival," and an aircraft combed 22,000 square miles of ocean searching for the insured.

Construing these cases in the light most favorable to Plaintiff, each of these cases stands for the simple proposition that Plaintiff must introduce at least some evidence, even circumstantial evidence, from which the trier of fact could rationally conclude that David Boynton died while the policy was in effect. "The burden of proving that death took place at any particular time within the seven years lies upon the person claiming a right to the establishment of which that fact is essential." <u>Midgett v. The United States</u>, 603 F.2d 835, 846 (Fed. Cl. 1979). Here, Plaintiff has failed to meet this burden. The sole piece of evidence offered by Plaintiff to establish the date of David Boynton's death is an affidavit from Brad Trusty, an officer employed by the State

Attorney's Office in Walton County, FL, who investigated the disappearance of David Boynton.  The affidavit states only that "Based on my 15 years of experience at the time of this incident, my investigation, and my physical observations I concluded that Mr. Boynton died on or about August 9, 1993."  (Doc. 30-5, 2).  The affidavit offers no facts on which Mr. Boynton's opinion is based.  Although Rule 702 of the Federal Rules of Evidence permits expert testimony in the form of opinions, Plaintiff has not contended, even in a conclusory manner, that Mr. Trusty qualifies as an expert.  Assuming arguendo that Mr. Trusty does qualify as an expert, Mr. Trusty would only be able to offer his opinion to the jury in the form of testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Here, Plaintiff has made no attempt to convince the Court that Mr. Trusty's opinion, whether in the form of an affidavit or testimony, is based on sufficient facts or data, is the product of reliable principles and methods, and that such principles and methods were reliably applied to the facts of the case.

In addition, Plaintiff offers no *independent* evidence, whether in the form of investigation reports, depositions, or answers to interrogatories to support Mr. Trusty's opinion.  The Court finds it revealing that the sole piece of evidence offered by Plaintiff to withstand the motion for summary judgment is but one affidavit and within that affidavit, a single sentence supporting Plaintiff's case.  In a motion for summary judgment, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker, 911 F.2d at 1577 (citing Anderson, 477 U.S. at 251).  Mr. Trusty's unsubstantiated affidavit is a "mere 'scintilla'" of evidence.

In Mettler, Peak, Friedman, O'Brien, and Rodriguez Diaz, circumstantial evidence permitted the inferences that the insured drowned in the river, succumbed to illness or disease, committed suicide, or perished at sea.  Here, Plaintiff offers no evidence of the *attendant circumstances* surrounding the disappearance of David Boynton that would support any inference that Mr. Boynton died while covered under the policy.  In Peak, the evidence offered to support a cause and time of death were mere conclusory allegations in the complaint that the insured was ill.  Here, the Complaint contains no allegations, not even conclusory ones, to support the cause or time of David Boynton's

death. The only evidence concerning Mr. Boynton's disappearance is (1) he was never seen again after leaving work on the morning of August 9, 1993; (2) his car was discovered on Air Force property; and (3) one of his guns was missing. Thus, unlike the factual scenarios in Mettler, Peak, Friedman, O'Brien, and Rodriguez Diaz where the evidence could be pieced together in stepwise fashion and the cause and time of death inferred, the circumstances surrounding David Boynton's disappearance are a true mystery. This is a case of "mere absence" or "disappearance." See, e.g., McCune v. United States, 56 F.2d 572, 573 (6th Cir. 1932) ("From the proofs offered, the inference is simply that the insured went ashore and did not return.").

The facts surrounding David Boynton's disappearance appear to be most similar to the facts in Browne v. New York Life Ins. Co., 57 F.2d 62 (8th Cir. 1932). In Browne, the insured was a man of excellent health and the only evidence showing any possible change in that condition was evidence that he was suffering from an eye disability and at times was seemingly blind. He left home and notified his family that he was going to see an eye specialist. This he did not do. Later, the insured left word that he was going to Kansas City for a possible operation on his head. The insured was never seen or heard from again. The court concluded that no evidence existed that the insured died on the operating table. In addition, "[t]here was no evidence of any accident, or that he met with any violence en route to Salina or Kansas city; no dead body seems to have been found; there was no newspaper record of any casualty; and apparently no knowledge of anything of the sort reached the police department of either of these cities." Id. at 64. The court concluded that

> [t]he facts and circumstances fall far short of that proof which would lead unprejudiced minds, exercising their best judgment, to conclude that the insured died on May 15, 1921, or at any other particular time during the life of the policy. The jury could not, except by guess or surmise, have determined that insured's death occurred during the life of the policy, and hence it was the duty of the court to direct a verdict for the defendant.

Id.

Like the insured in Browne, Plaintiff offers no evidence that David Boynton's health was anything but excellent, that Mr. Boynton was involved in an accident, or that Mr. Boynton encountered any violence prior to his disappearance. Mr. Boynton's body

has never been found. The jury could not, except by guess or speculation, rationally conclude that Mr. Boynton died during the life of the policy based on one unsubstantiated affidavit. "The fact of continued life or previous death at the important date should be determined by the jury if there is sufficient evidence in the case to warrant a finding that the established presumption has been varied, and *by the court if there is no such evidence.*" Northwestern Mutual Life Ins. Co. v. Stevens, 71 F. 258, 261 (8th Cir. 1895) (emphasis added).

This conclusion is further supported by English v. United States, 25 F.2d 335 (D. Md. 1928) where the evidence was more substantial than the evidence in this case. The English Court nevertheless held that the facts were insufficient to establish that the insured died before the policy expired even though the insured was "weak in body, despondent in mind, and believed that his afflictions were beyond hope of recovery." Id. at 337. The facts in this case are certainly not as robust as the facts in English, for no evidence exists that Mr. Boynton was weak in body or despondent in mind. For all of these reasons, it is appropriate to conclude that the evidence is insufficient to support an inference that Mr. Boynton perished while the policy was in effect.

### 2. Applying State Law

Assuming arguendo and for purposes of this discussion only that Florida law is applicable to this case, the conclusion reached when applying Florida law is identical to the conclusion reached when applying federal law. Assuming that David Boynton was presumed to have died after the policy terminated and that Plaintiff is permitted to offer evidence to rebut the presumptive date of death, the evidence offered by Plaintiff falls short of rebutting the presumptive date of death under Florida law. Plaintiff cites Johns v. Burns, 67 So. 2d 765 (Fla. 1953) to support his case. In Johns, the Florida Supreme Court held that the time of death may be established by circumstantial evidence. The court then recited the standard for establishing the time of death:

> Neither the presumption of death arising from seven years' unexplained absence nor the rule that death is deemed to have occurred at the expiration of the period precludes an inference that death may have occurred before the expiration of such period where there are circumstances which would justify a conviction that death occurred at an earlier date, as for instance that the absent person, during the period after his

>disappearance, encountered some specific peril, or was subject to some immediate danger calculated to destroy life, or where the circumstances are such as to make it improbable that he would have abandoned his home or family, or that when he left home he was in poor health or in a precarious physical condition, or that he contemplated suicide, or by any other circumstances which when submitted to the test of reason and experience would warrant a conclusion of death at an earlier time." 25 C.J.S., Death, § 10.

Id. at 767.

Applying this language, the Johns Court determined that the decedent could be deemed to have died on or about the date of his disappearance because the circumstances were such as to make it improbable that he would have abandoned his former life in favor of traveling in cognito. The court's decision was based on evidence indicating that the decedent led a serene and untroubled life. Id. at 767. Here again, Plaintiff presents no evidence and even fails to allege that David Boynton led a serene and untroubled life such that it would have been improbable for him to have abandoned his wife and former life. The pleadings and evidence submitted do not even discuss Mr. Boynton's life. The Florida standard merely incorporates the federal standard and requires the Plaintiff to produce circumstantial evidence on which the actual date of death can be inferred. This Plaintiff has failed to accomplish.

### III.  CONCLUSION

1.  Plaintiff has failed to present sufficient evidence under federal and state law from which a jury could infer that David Boynton died while covered under the SGLI policy.

2.  Defendant's Amended Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 30) is granted.

3.  The clerk shall enter judgment dismissing Plaintiff's action with prejudice.

4.  The clerk shall close the file.

Ordered on January 27, 2006.

/s/ Richard Smoak
**Richard Smoak**
**United States District Judge**